## PECK *v.* HEURICH.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 289. Argued April 26, 27, 1897. — Decided May 24, 1897.

A judgment cannot be affirmed upon a ground not taken at the trial, unless it is made clear beyond doubt that this could not prejudice the rights of the plaintiff in error.

By the common law, prevailing in the District of Columbia, an agreement
by an attorney at law to prosecute, at his own expense, a suit to recover
land in which he personally has and claims no title or interest, present
or contingent; in consideration of receiving a certain proportion of what
he may recover, is unlawful and void for champerty.

A deed, conveying lands in the District of Columbia to an attorney at law
and another person, in trust that the grantees should sue for, take pos-
session of, and sell the lands, and that the attorney should retain one
third of the proceeds, after paying out of it all the costs and expendi-
tures, and that the other two thirds, clear of any costs or charges what-
ever, should be paid to the grantors, is void for champerty, and will not
sustain an action by the grantees to recover part of the lands from third
persons.

THIS was an action of ejectment, brought September 20,
1892, in the Supreme Court of the District of Columbia by
Ezra J. Peck and Leo Simmons, trustees, against Christian
Heurich, to recover land in the District of Columbia. The
defendant pleaded the general issue.

At the trial the plaintiffs, as stated in the bill of exceptions,
offered in ·evidence a deed dated and recorded November 8,
1828, from William A. Bradley, purporting to convey to Ann
Bartlett in fee simple the real estate described in the declara-
tion, together with other real estate, in consideration of the
sum of $2450; "and thereupon counsel for plaintiffs announced
to the court that they proposed to prove that the plaintiffs
and defendant traced their respective titles to the land in con-
troversy from said Ann Bartlett as a common source of title —
which defendant, by his counsel, then and there denied."

The plaintiffs then called·three witnesses who testified that
Anna L. Peck and ten other persons named were the heirs of
Ann Bartlett. These witnesses were an uncle and aunt of Anna
L. Peck, and her husband, Ezra J. Peck. Upon their cross-
examination it appeared that the heirs of Ann Bartlett were
first informed that they had any title to these lands by Leo
Simmons in 1890.

The plaintiffs then offered in evidence the record of a deed
dated October 20, 1891, from the persons before shown to be
the heirs of Ann Bartlett, and from the husbands and wives
of those who were married, describing themselves as all the
heirs of Ann Bartlett, and reciting that they executed this

deed, " believing it to be for their interest and convenience to do so," and purporting, for the consideration of five dollars, to convey to Peck and Simmons, trustees, in fee simple, all the real estate in the District of Columbia of which Ann Bartlett died seized, and especially the land conveyed to her by Bradley by the deed of November 8, 1828. The conveyance by the heirs of Ann Bartlett to the plaintiffs was expressed to be upon the following trusts:

" In trust, nevertheless, to and for the following uses and purposes, namely : to take and hold possession of the said real estate, and to institute and prosecute to a final conclusion in their own names any and every action, suit or proceeding, in law and in equity, or otherwise however, for the possession of said real estate, if in their judgment expedient, and to compromise, pay for and purchase any outstanding claim or title against said real estate, if in their judgment expedient, and generally to do any and everything in their judgment expedient, which may be necessary to vest in them a perfect and unencumbered title in fee simple to, and the recovery of possession of, said real estate; and upon the vesting in them of a perfect and unencumbered title in fee simple, and the recovery of the possession of said real estate, or before and without the same, and without such proceedings, acts and doings, as they may think best, and at any time, to sell and convey said real estate, or any part thereof, in fee simple, or in any quantity of estate or estates, to any person or persons, and for such price and upon such terms as they may in their best judgment consider for the interest of the parties concerned, and upon such sale or sales to convey the title sold to the purchaser or purchasers without liability on the part of the purchaser or purchasers to see to the application of the purchase money ; and out of the purchase moneys or the full amount said property may sell for, it is distinctly understood between the parties to this indenture, that the said Leo Simmons, one of the trustees or parties of the second part shall retain 33⅓ per cent, or one third, after paying all expenses, costs and expenditures of the said parties of the second part, in the execution of this trust, out of the same, and the

other two thirds, or 66⅔ per cent, of said purchase money, clear of any cost or charges whatever, to pay the heirs of said Ann Bartlett, their heirs or assigns, according to their respective interest; and it is further understood between the parties to this indenture that should Leo Simmons die after suit has been begun for the recovery of any said property, and before a settlement shall have been made, then in that case the court having jurisdiction shall appoint a trustee to act in his stead and pay over to the heirs or assigns of the said Simmons such profits as he would have been entitled to after paying said costs and expenditures."

The plaintiffs also offered in evidence records of deeds dated June 22, 1892, of the same real estate from Mr. and Mrs. Peck to H. Austin Clark, as trustee, and from Clark to Peck and Simmons, as trustees under the deed of October 20, 1891.

The defendant objected to the admission of the records of the deeds of October 20, 1891, and June 22, 1892, upon three grounds: First. That they were not recorded until after this suit was brought. Second. That the deed of October 20, 1891, was not recorded within six months after its date. Third. That both deeds were champertous on their face.

The presiding judge sustained the third objection, and declined to admit records of the deeds in evidence, on the ground that they were champertous on their face; and expressed no opinion upon the other objections.

The bill of exceptions stated that "thereupon the plaintiffs' counsel announced to the court that the refusal of the court to admit the aforesaid records of said three deeds in evidence broke the continuity of plaintiffs' title, and that they would therefore rest their case. Whereupon the court instructed the jury to render a verdict for the defendant, which was done."

Judgment was rendered on the verdict; and the plaintiffs duly excepted to the ruling excluding the deeds, and to the instruction to return a verdict for the defendant, and appealed to the Court of Appeals, which, without considering the first and second objections made to the deeds at the trial, affirmed the judgment upon two grounds: First. That the deeds were champertous. Second. That the plaintiffs had not introduced

any evidence that William A. Bradléy, the grantor of Ann Bartlett, had any title, or was ever in possession, or had any right to the possession, or that the State had ever granted the property; and the plaintiffs therefore had not been prejudiced by the exclusion of the deeds even if they were valid.  6 App. D. C. 273.  The plaintiffs sued out this writ of error.

*Mr. Franklin H. Mackey* and *Mr. Arthur A. Birney* for plaintiffs in error.

*Mr. W. F. Mattingly* and *Mr. Leon Tobriner* for defendants in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

One ground taken in the opinion of the Court of Appeals, and at the argument in this court, in support of the judgment for the defendant, was that, independently of the question of the validity of the deeds to the plaintiffs, they could not maintain this action, because they had not complied with the rule of the law of Maryland, in force in the District of Columbia, by which, in order to maintain an action of ejectment, the plaintiff must show that he has the legal title in the land and the right of possession, and cannot establish this without first showing that the land had been granted by the State, unless both parties are shown to claim title from the same source. *Mitchell* v. *Mitchell*, 1 Maryland, 44; *Anderson* v. *Smith*, 2 Mackey, 275.

But this ground is not open to the defendant upon the record.  No such objection to the introduction of the deed in evidence was made at the trial.  The course of things at the trial, so far as regards this point, was as follows: The plaintiffs gave in evidence, without objection, the deed from William A. Bradley to Ann Bartlett, and said in open court that they proposed to prove the fact that the plaintiffs and the defendant traced their respective titles to the land in controversy from Ann Bartlett as a common source of title; and

the defendant denied that fact.   The plaintiffs, by way of
proving their own title under Ann Bartlett, which was a ne-
cessary step towards proving the fact so controverted, intro-
duced evidence that the grantors in the deed of October 20,
1891, were the heirs of Ann Bartlett, and then offered that
deed in evidence, and, upon the court's ruling it out as void
for champerty, declared to the court that this ruling broke
the continuity of their title, and that they therefore rested
their case.   The plaintiffs at the outset having given notice of
their intention to prove that Ann Bartlett was the common
source of the titles both of themselves and of the defendant,
and having been prevented from tracing their own title from
her, any amount of proof that the defendant derived his title
from her became wholly immaterial, and there was no occa-
sion for the plaintiffs to make a specific offer of such proof.
It was more respectful to the presiding judge, and sufficient
to preserve the plaintiffs' rights in the appellate court, to take
the course, which they did, of resting their case, and taking
an exception to the exclusion of evidence without which they
could not possibly recover.   The plaintiffs, by reason of the
ruling excluding the deed to them, had never been permitted
to introduce the first step in the proof of their case, and, so
long as that ruling was unreversed, had no interest in offering
any evidence of the defendant's source of title.   It cannot be
assumed that the plaintiffs would not have introduced such
evidence, if the court had given them a standing in the case
which would have made it avail them to do so.   A judgment
cannot be affirmed upon a ground not taken at the trial, unless
it is made clear beyond doubt that this could not prejudice the
rights of the plaintiff in error.   *Deery* v. *Cray*, 5 Wall. 795,
808 ; *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S.
99, 103 ; *Jones* v. *Sisson*, 6 Gray, 288 ; *Jones* v. *Wolcott*, 15
Gray, 541.

We are then brought to the consideration of the principal
question in the case, whether the deeds to the plaintiffs were
void for champerty.

In many parts of the United States, and probably in Mary-
land and consequently in the District of Columbia, the ancient

English statutes of champerty and maintenance have either never been adopted, or have become obsolete, so far as they prohibited all conveyances of lands held adversely. 4 Kent Com. 447; *Roberts* v. *Cooper*, 20 How. 467; *Schaferman* v. *O'Brien*, 28 Maryland, 565; *Matthews* v. *Hevner*, 2 App. D. C. 349.

But according to the common law, as generally recognized in the United States, wherever it has not been modified by statute, and certainly as prevailing in the District of Columbia, an agreement by an attorney at law to prosecute at his own expense a suit to recover land in which he personally has and claims no title or interest, present or contingent, in consideration of receiving a certain proportion of what he may recover, is contrary to public policy, unlawful and void, as tending to stir up baseless litigation. 4 Kent Com. 447, note; *McPherson* v. *Cox*, 96 U. S. 404, 416; *Stanton* v. *Haskin*, 1 McArthur, 558; *Johnson* v. *Van Wyck*, 4 App. D. C. 294; *Brown* v. *Beauchamp*, 5 T. B. Monroe, 413; *Belding* v. *Smythe*, 138 Mass. 530; *Stanley* v. *Jones*, 7 Bing. 369, 377; *S. C.* 5 Moore & Payne, 193, 206.

The trust declared in the deed under which these plaintiffs claim title is to take possession of the real estate, to bring all suits necessary for that purpose, to pay off outstanding claims if deemed by the trustees to be expedient, and to do everything necessary to vest in them a perfect and unencumbered title and the possession of the lands, and after getting, with or without suit, the title and possession, to sell and convey the lands. The deed states that "it is distinctly understood between the parties" that, out of the purchase money received, "Leo Simmons, one of the trustees or parties of the second part, shall retain 33⅓ per cent, or one third, after paying all expenses, costs and expenditures of the said parties of the second part in the execution of the trust, out of the same"; that the other two thirds of the purchase money, "clear of any costs or charges whatever," shall be paid to the heirs of Ann Bartlett, their heirs or assigns, according to their respective interests; and "that should Leo Simmons die after suit has been begun for the recovery of any said property, and before a

settlement shall have been made, then in that case the court having jurisdiction shall appoint a trustee to act in his stead and pay over to the heirs or assigns of the said Simmons such profits as he would have been entitled to after paying said costs and expenditures."

The deed clearly expresses the intention of the parties that Simmons shall receive one third, and the grantors two thirds, of the gross proceeds of the real estate conveyed. The intention that all costs and expenses of obtaining title and possession of the lands, by suit or purchase or otherwise, shall be borne wholly by Simmons, and in no part by the grantors, is clearly shown, in the first place, by the stipulation that he shall receive one third of the proceeds "after paying all expenses, costs and expenditures of" the trustees in the execution of the trust "out of the same" — evidently meaning out of his third part. But any possible doubt which might arise upon this clause, taken by itself, is removed by the next clause, which stipulates that the two other thirds of the proceeds shall be paid to the heirs of Ann Bartlett, "clear of any costs or charges whatever," as well as by the final clause, which stipulates that, should Simmons die after bringing suit and before making a settlement, there shall be paid to his heirs or assigns "such profits as he would have been entitled to after paying said costs and expenditures."

Upon the nature and effect of the agreement made by the attorney with the grantors in this deed, this court concurs in the opinion expressed by the Court of Appeals of the District of Columbia, as follows: " He agreed to pay the costs of the litigation; he agreed to take as his compensation a part of the land which was the subject of the suit, or a part of the proceeds of sale of it, which amounts to the same thing; and his compensation was not a fixed sum of money, payable out of the proceeds of sale, but a contingent share of the very thing to be recovered, or of the money that might be received by way of settlement or compromise; and the character of the enterprise, on the part of the attorney, was so plainly a speculative one, that in the deed the net results to him are mentioned as 'profits.' If this be not champerty, we fail to see

wherein there can be champerty." "We must regard an agreement by any attorney to undertake the conduct of a litigation on his own account, to pay the costs and expenses thereof, and to receive as his compensation a portion of the proceeds of the recovery, or of the thing in dispute, as obnoxious to the law against champerty; and that this was the character of the arrangement in the present case we are entirely satisfied. The very thing in dispute was conveyed, or sought to be conveyed, in advance, to the attorney and an associate, for the express purpose of enabling the attorney to conduct the litigation on his own account and at his own cost and expense; and in consideration of this he was to retain at the end of the litigation one third of what had been conveyed to him, and was to account to his clients for the other two thirds. This was certainly an agreement on his part to take as his compensation a part of the thing in dispute, and it does not alter the case at all that the land when recovered was to be sold. That was only the practical mode for a division of proceeds between the parties to the enterprise." 6 App. D. C. 283, 284.

The deed, as appears upon its face, having been made to carry out the champertous agreement, was unlawful, and passed no title; and the joinder of Peck as co-trustee in the deed could not give it validity.

The result is that this action cannot be maintained by the trustees claiming under the deed, although a similar action might have been maintained by the grantors in their own names. *Burnes* v. *Scott*, 117 U. S. 582, 590, and *Hilton* v. *Woods*, L. R. 4 Eq. 432, 439, there cited.

*Judgment affirmed.*