UNITED STATES v. GENTRY.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1902.)

No. 1,757.

1. TRESPASS—CUTTING TIMBER—JUSTIFICATION NOT ESSENTIAL TO PROOF THAT TRESPASS NOT WILLFUL.

The test which determines whether one was a willful or an innocent trespasser is not his violation of or compliance with the law, but his honest belief and actual intention at the time he committed the trespass, and neither a justification of his acts nor any other complete defense to them is essential to establish the fact that he was not a willful trespasser.

2. SAME—EVIDENCE OF INTENTION AND GOOD FAITH.

Where the good faith or intention of a party in an affair is in issue, his acts and sayings in relation to it at or about the time of the transaction generally constitute the best evidence, and are always competent and material.

3. SAME—CUTTING TIMBER—CONSTRUCTION OF SECRETARY'S RULE AS TO SALES UNDER ACT JUNE 3, 1878.

The rule of the secretary of the interior that one who takes timber from the mineral land of the United States under the act of June 3, 1878 (20 Stat. 88 [U. S. Comp. St. 1901, p. 1528]), shall not sell or dispose of it without taking a written agreement from the purchaser that it shall not be used except for building, agricultural, mining, or domestic purposes within the state or territory, requires the vendor to take the agreement before or at the same time when he sells or disposes of the timber, and obtaining the written contract three months after the sale and delivery is not a substantial compliance with the rule.

4. SAME—FULL COMPLIANCE WITH THE ACT OF 1878 REQUISITE TO JUSTIFICATION THEREUNDER.

The rule is that one who takes timber from the public domain is a willful trespasser, and a full and fair compliance with the requirements of the act of June 3, 1878 [U. S. Comp. St. 1901, p. 1528], and with the rules prescribed by the secretary of the interior thereunder, is essential to justify the taking of timber from the public domain under that act.

5. PLEADING—AMENDED SUPERSEDES ORIGINAL COMPLAINT.

An amended complaint, which is complete in itself, and which does not refer to or adopt the original complaint as a part of it, entirely supersedes its predecessor, and becomes the sole statement of the plaintiff's cause of action.

6. ERROR NOT DISREGARDED UNLESS ABSENCE OF PREJUDICE IS CLEAR BEYOND DOUBT.

The presumption is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice, and could not have prejudiced, the complaining party, that the rule that error without prejudice is no ground for reversal is applicable.

Caldwell, C. J., dissenting.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Colorado.

This is the second appearance of this case in this court. The judgment on the first trial was reversed, because in an action for the recovery of damages for the conversion of timber a verdict and judgment for the recovery of lumber and logs were rendered without any pleading of such a cause of action, or any prayer for such relief. Before the second trial was had, the complaint in conversion was superseded by an amended complaint, which set forth a cause of action in replevin, and prayed for the recovery of 539,505 feet of lumber and 300 saw logs, or for the sum of $5,000, the value thereof. The defendant, Gentry, answered this new cause of action that the lumber and logs were his; that he had lawfully taken them from the mineral lands of the United States, in compliance with the terms of the act of congress of June 3, 1878 (20 Stat. 88 [U. S. Comp. St. 1901, p. 1528] ); that he had taken them in good faith in the honest belief that he had a lawful right to do so; that the lumber and logs had been taken from him by the United States marshal under color of the authority of the circuit court, and that their proceeds were in its registry. He prayed that he might be adjudged to be the owner of the lumber and logs, and that their proceeds in the registry of the court might be paid over to him. The plaintiff put at issue the averments of the amended answer, and the case proceeded to its second trial. At this trial it conclusively appeared that the logs and lumber of which the defendant had possession when the action was commenced had all been taken from him by the United States marshal under a writ of replevin issued in this action without authority and in violation of the statutes and practice of Colorado (Gentry v. U. S., 101 Fed. 51, 53, 41 C. C. A. 185, 187); that, pursuant to an order of the court, the marshal had sold this property, and that the net proceeds of the sale, which, with interest, amounted to more than $3,600, had been deposited in the registry of the court to the credit of the cause, to abide its final determination. Notwithstanding these pleadings and facts, and the plain issue relative to the disposition of this sum of money, the court instructed the jury at the close of the trial that this was an action by the United States to recover damages for the conversion of the lumber and logs; that, if the defendant had complied with the act of June 3, 1878, they ought to find a verdict in his favor; that, if he had failed in compliance, but was an unintentional trespasser, they should return a verdict against him for the value of the timber in the trees, and that, if they found that he was a willful trespasser, they should render a verdict against him for the full value of the manufactured lumber, as it was at the commencement of the action. Under these instructions the jury returned a simple verdict for the defendant, without determining the ownership of the logs and lumber seized, or of their proceeds in the registry of the court, and a judgment that the defendant go hence without day has been rendered. The writ of error which the United States has sued out challenges this judgment.

Glenn E. Husted and Henry C. Lewis (Marsden C. Burch, on the brief), for plaintiff in error.

Charles D. Hayt (Clyde C. Dawson, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The chief complaint of the government concerning the trial of this case is that the defendant was permitted to introduce certain evidence tending to show an alleged compliance on his part with the act of June 3, 1878 [U. S. Comp. St. 1901, p. 1528], and that the jury was instructed that, if they believed from this evidence that the defendant

had substantially complied with that act and with the rules adopted by the secretary of the interior thereunder, he would be entitled to their verdict. The act of June 3, 1878, provides that any bona fide resident of the state of Colorado may fell and remove timber from the mineral lands of the United States for mining, agricultural, and domestic purposes within that state in accordance with the terms of that act and the rules of the secretary of the interior prescribed thereunder. The complaint of the government is founded upon the following rule:

"Every owner or manager of a sawmill, or other person felling or removing timber under the provisions of this act, shall keep a record of all timber so cut or removed, stating time when cut, names of parties so cutting the same or in charge of the work, and describing the land from whence cut by legal subdivisions if surveyed, and as near as practicable if not surveyed, with a statement of the evidence upon which it is claimed that the land is mineral in character and stating also the kind and quantity of lumber manufactured therefrom, together with the names of parties to whom any such timber or lumber is sold, and shall not sell or dispose of such timber or lumber made from such timber, without taking from the purchaser a written agreement that the same shall not be used except for building, agricultural, mining or other domestic purposes within the state or territory; and every such purchaser shall be required to file with said owner or manager a certificate, under oath, that he purchases such timber or lumber, exclusively for his own use and for the purposes aforesaid."

The evidence, the introduction of which is assigned as error, is that about September 10, 1898, the defendant made an oral agreement with a certain mining company to sell it lumber to timber the Mabel-Grace mine from time to time as this lumber should be needed for that purpose; that he delivered about 1,500 feet of lumber under this agreement; that he was then stopped from proceeding with his contract by the writ of replevin; that afterwards, and on January 10, 1899, he procured a written agreement from this purchaser to the effect that this lumber had been and would be used for the purpose of timbering its mining property in the state of Colorado, and for no other purpose; that he made a similar oral agreement about September 6, 1898, for the sale of lumber to one Swope, a road overseer, and sold him 720 feet of lumber to improve the county road; that about January 7, 1899, Swope made a written contract to use this lumber for that purpose only; that these purchasers made certificates in the year 1899 that the timber they bought of the defendant was purchased to be used for the purposes stated in their respective agreements; that as the defendant cut the logs from which this lumber was manufactured he made daily memoranda on slips of paper of the number of feet cut, where it was cut, and who cut it, and filed them in his office; that after his business was stopped by the seizure of the lumber by the marshal he made up from these slips a record in a book which was received in evidence, and which contained the statements of fact required to be recorded by the rule which has been quoted, and that after this record was completed he destroyed the slips. The objections to the various items of this evidence are many and varied, but they are all founded on the proposition that it did not tend to show a compliance with the rule of the secretary under consideration. For the purpose of the decision of this case, but with-

out deciding or intimating any opinion upon that question, it is conceded that there are some parts of this evidence which did not tend to establish such a compliance. There was, however, another ground upon which all this evidence was admissible, and that was that it had a clear tendency to show the good faith and innocence of the defendant. One of his defenses was that he took this timber in good faith, with an honest belief that he had a lawful right to do so. That defense raised a material issue,—the issue whether the measure of the right of the government, if it had any right, was the value of the timber in the trees or its value in the manufactured lumber. The test to determine whether one is a willful or an innocent trespasser is not his compliance with the law, but his honest belief and his actual intention at the time he commits the trespass. Neither a justification of his acts nor any other complete defense to them is essential to the proof that he who committed them was not a willful trespasser. And, when the good faith or the intent of a party in a given affair is in issue, his acts and sayings in relation to it at about the time of the transaction generally constitute the best evidence of the fact, and are always competent and material. In view of this issue there was no error in the admission of any of the evidence here challenged. U. S. v. Homestake Mining Co. (C. C. A.) 117 Fed. 481; Durant Min. Co. v. Percy Consol. Min. Co., 93 Fed. 166, 168, 169, 35 C. C. A. 252, 254.

This rule of the secretary of the interior requires that the owner or manager of a sawmill "shall not sell or dispose of such timber or lumber made from such timber, without taking from the purchaser a written agreement that the same shall not be used except for building, agricultural, mining, or other domestic purposes within the state or territory." The defendant sold and disposed of three lots of lumber, which were delivered to the road overseer and to the owner of the Mabel-Grace mine in September, 1898, without taking the written agreements required by this rule until some time in January, 1899. It is assigned as error that the court instructed the jury that they might find from these facts a substantial compliance with the rule, and might return a verdict for the defendant. Is it a substantial compliance with a rule that no sale or disposal of property shall be made without taking a written agreement, to sell and dispose of the property without procuring any such agreement, and then to obtain one three or four months after the sale or disposition of the property has been effected? It is said that the rule does not specify the time when the agreement shall be taken; that it does not require it to be taken before or at the time of the sale or disposal of the property; and that the procuring of the agreements three months after the sales was a literal fulfillment of the requirements of the rule, especially in view of the fact that these were continuing contracts, agreements to sell and deliver the lumber from time to time as the purchasers should need and order it. But, when the terms and purpose of the rule are considered, it seems clear that this cannot be the intent with which the secretary prescribed this requirement, nor can it be its true interpretation. The natural and rational meaning of the prohibition of one act without the doing of another is that the first shall not be done unless before or at the same time when it is done the second is also completed. The manifest pur-

pose of this inhibition strongly indicates that it was intended to be used and was used in this, its customary, signification. The object of the rule was to require the person who was taking timber from the mineral lands of the government to keep a record of his transactions, and written agreements from his purchasers, to the end that the inspectors of the government might see by an examination of these writings whether or not he was complying with the act of congress. The general rule was and is that he who takes timber from the lands of the United States is a willful trespasser. The act of 1878 carves an exception out of this rule, and gives to the bona fide residents of Colorado and some other states the lawful authority to fell and remove timber from the mineral lands of the government for certain purposes, subject to the rules prescribed by the secretary of the interior. It is only when the bona fide resident fairly and fully complies with the requirements of the act and of the rules promulgated by the secretary that he excepts himself from the general rule that all takers are trespassers, and removes himself from their class. When the portion of the rule which declares that such a resident shall not sell or dispose of the timber or lumber he cuts without taking a written agreement from the purchaser that the same shall not be used except for the purposes specified in the law is read in view of the primary and plain meaning of its terms, and in the light of the evident intent and purpose of the secretary in prescribing it, its true interpretation is that such a sale or disposal shall not be made without taking the written agreement before or at the same time that the sale or disposal is made. It may be that under some circumstances the reduction of the agreement to writing within a few hours after the sale or disposal would constitute a fair compliance with the rule. It may be that it is not imperative that the agreement should be written and signed at the very instant of the sale. But it must be taken either before or at substantially the same time that the timber is sold or disposed of, and dum fervet opus, or its taking will not constitute a compliance with the law. A sale and delivery of the lumber without taking the written agreement until more than three months thereafter is not a substantial compliance with the act, and the court below fell into an error in charging the jury that they might so find. This error necessitates a reversal of the judgment.

This conclusion has not been reached without a consideration of the contention of the defendant that the errors in the trial of this case were not prejudicial to the government, and would not warrant a reversal of the judgment, for the reason that under the pleadings and evidence the plaintiff could not have recovered in any event. His theory is that the amended complaint, which is a complaint in replevin, superseded the original complaint, which was a complaint in conversion; that counsel for the government sought to recover at the trial upon the original complaint only; and that, as he was not entitled to recover in conversion, he was not entitled to recover at all. The amended complaint makes no reference to the original complaint. It is complete in itself, and it states a cause of action for the recovery of the possession of logs and lumber, or for their value, and nothing more. It does not allege or pray to recover damages for the taking

and conversion of the property. The questions whether or not the court properly allowed the filing of this complaint upon the motion of the plaintiff, and whether or not its various rulings against the defendant were just and lawful, are not here for our consideration, because the defendant has not sued out any writ of error or made any assignment of errors to enable us to review them. The amended complaint was filed under the order of the court. An amended complaint, which is complete in itself, and which does not refer to or adopt the original complaint as a part of it, entirely supersedes its predecessor, and becomes the sole statement of the cause of action. The original complaint becomes functus officio from the date of the filing of its successor. Hawkins v. Massie, 62 Mo. 552, 553; State v. Simpkins, 77 Iowa, 676, 678, 42 N. W. 516; Cramer v. Mack (C. C.) 12 Fed. 803, 804, 20 Blatchf. 479; Washer v. Bullit Co., 110 U. S. 558, 562, 4 Sup. Ct. 249, 28 L. Ed. 249. When the amended complaint was filed, therefore, the original complaint for damages for conversion ceased to state any cause of action in this suit. The only cause of action stated then or thereafter was the cause of action in replevin set forth in the amended complaint. The first judgment in this action was reversed because a cause of action in replevin was tried on a complaint in conversion. If the government had recovered at the second trial, it must be conceded that its judgment would have been equally vulnerable, because it would have been the result of the trial of an action for conversion, and would have been a judgment for damages for conversion, when the only cause of action pleaded was in replevin. But it does not follow from the fact that a judgment against the defendant on the trial as it was actually conducted could not have been sustained on account of erroneous rulings against him that the government might not have recovered on the pleadings and the evidence if the error of which complaint has been made had not been committed. On the other hand, it may well be that, if the court had instructed the jury that, if the defendant had not complied with the rule in the removal and sale of the three lots of lumber which he delivered to Swope and to the owner of the Mabel-Grace mine, they would have found that he had not substantially complied with the rule of the secretary, and that the government was entitled to the possession of the timber, or of its proceeds, in the registry of the court, to the extent at least of its stumpage value, which was conceded to be $1 per 1,000 feet. If they had come to that conclusion, a verdict to that effect would have been in accordance with the allegations and the proofs under the amended complaint. In this state of the case it cannot be said to be so clear that the government could not have recovered, in any event, under the pleadings and the proof that there is no doubt that the error of the court did not prejudice and could not have prejudiced the plaintiff, and for that reason it cannot be disregarded. The presumption always is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice and could not have prejudiced the complaining party that the rule that error without prejudice is no ground for reversal is applicable. Railroad Co. v. Holloway, 52 C. C. A. 260, 114 Fed. 458, 465; Association v. Shryock, 20 C. C. A. 3, 11, 73 Fed. 774, 781; Railway Co. v. McClurg, 8 C. C. A. 322,

325, 326, 59 Fed. 860, 863; Deery v. Cray, 5 Wall. 795, 807, 808, 18. L. Ed. 653; Smith v. Shoemaker, 17 Wall. 630, 639, 21 L. Ed. 717; Moores v. Bank, 104 U. S. 625, 630, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471, 28 L. Ed. 62; Railroad Co. v. O'Brien, 119 U. S. 99, 103, 7 Sup. Ct. 118, 30 L. Ed. 299; Mexia v. Oliver, 148 U. S. 664, 673, 13 Sup. Ct. 754, 37 L. Ed. 602; Railroad Co. v. O'Reilly, 158 U. S. 334, 337, 15 Sup. Ct. 830, 39 L. Ed. 1006; Peck v. Heurich, 167 U. S. 624, 629, 17 Sup. Ct. 927, 42 L. Ed. 302.

Moreover, the judgment in this case leaves the real issue—the ownership of the proceeds of the lumber in the registry of the court— undetermined, and open to subsequent litigation. There have already been two mistrials of this case. This court has twice read the evidence which the respective parties have been able to produce relative to the character of the taking of the timber and the intention and purpose of the defendant, and, in view of the protracted litigation. which this action is producing, it does not hesitate to express its opinion that the strong probabilities are that the ultimate result of this litigation, if continued, will be that the defendant will be found to be an innocent or unintentional trespasser, and entitled to all the proceeds of the lumber except its stumpage value of $1 per 1,000 feet; and it suggests that if the parties, within 60 days after the mandate of this court is filed in the circuit court, shall stipulate that the United States may recover and be paid one-seventh, and the defendant, Gentry, may recover and be paid six-sevenths, of the proceeds of the lumber and logs in the registry of the court, without the taxation of any costs against either party, a judgment to that effect might be rendered upon this stipulation, and payments could be made accordingly. Such a course of proceeding would probably be more beneficial and less expensive to each of the parties to this litigation than farther trials of this action. If no such stipulation should be made, the case must be tried again.

As the pleadings now stand, the main issue is the ownership of the proceeds of the logs and lumber in the registry of the court. If the defendant was not a trespasser, he is entitled to this amount. If he was an innocent trespasser, he is probably entitled to about six-sevenths of it, while the government is entitled to one-seventh. If he was a willful trespasser, the United States is entitled to the entire fund. The judgment of the circuit court is reversed, and the case is remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.

CALDWELL, Circuit Judge (dissenting). The brief of the plaintiff in error does not comply in any respect with the requirements of rule 24 of this court (31 C. C. A. clxiv, 90 Fed. clxiv), which declares that errors not specified according to that rule "will be disregarded." The technical character of the plaintiff's case makes it one for the rigorous application of this rule. Tubbs v. U. S., 44 C. C. A. 357, 105 Fed. 59; City of Lincoln v. Sun Vapor Street Light Co., 19 U. S. App. 431, 8 C. C. A. 253, 59 Fed. 756; Assurance Co. v. Polk, 44 C. C. A. 104, 104 Fed. 649; Oswego Tp. v. Travelers' Ins. Co., 36 U. S. App. 13, 17 C. C. A. 77, 70 Fed. 225; Van Gunden

v. Iron Co., 8 U. S. App. 229, 3 C. C. A. 294, 296, 52 Fed. 838, 841; Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 24 U. S. App. 38, 45, 12 C. C. A. 350, 353, 63 Fed. 891, 894; Doe's Ex'rs v. Mining Co., 44 U. S. App. 204, 214, 17 C. C. A. 190, 196, 70 Fed. 455, 461; Sovereign Camp v. Jackson, 38 C. C. A. 208, 97 Fed. 382. There is no reason why this rule, which we have applied in so many other cases, should not be applied to this case, but many reasons why it should be, and among them this one: it would have the effect to terminate this litigation. It is always allowable to oppose one technicality against another in order to put an end to litigation and promote the ends of justice.

If this rule is disregarded, and the merits gone into, it should be affirmed. Three small lots of lumber, amounting in the aggregate to a few hundred feet only, were delivered before the required written agreement was signed, but the sale was of so much lumber as the road overseer might need in making and repairing the roads in his district and of a small quantity a miner might need in his mining operations. When the defendant agreed to supply this lumber, no fixed quantity was or could be agreed upon that was to be determined by its application to the purposes and uses for which it was purchased. As soon as this amount was ascertained, the required written agreement was signed. This was not only a substantial, but a full, compliance with the rule of the secretary of the interior.

The verdict and judgment for the defendant ex necessitate disposed of the fund in court, because that fund was derived from the sale of property, which, though claimed by the United States at the inception of the suit, the jury found belonged to the defendant, and this finding necessarily entitled him to the fund. It is unreasonable to suppose that the owner of the property was not entitled to the proceeds of its sale. On motion the court must have ordered the proceeds of the sale paid to the owner of the property sold, in accordance with the uniform practice in such cases.