ALASKA-TREADWELL GOLD MINING CO. v. CHENEY.

(Circuit Court of Appeals, Ninth Circuit. June 10, 1908.)

No. 1,514.

1. APPEAL AND ERROR—QUESTIONS CONCLUDED BY DECISION—SECOND WRIT OF ERROR.

Where, after a verdict for a plaintiff suing as administrator, a motion in arrest of judgment was sustained and judgment entered dismissing the action on the ground that plaintiff's appointment as administrator was void, which judgment was reversed by the appellate court, and a judgment on the verdict directed which was entered, the only question concluded by such decision of the appellate court was that of the validity of plaintiff's appointment, and the defendant may maintain proceedings in error after the entry of the final judgment to review questions which arose on the trial and which could not have been considered by the appellate court on the prior hearing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 48.]

2. MASTER AND SERVANT—ACTION FOR DEATH OF SERVANT—EVIDENCE OF NEGLIGENCE.

Plaintiff's intestate was killed while working in defendants' mine shaft by the falling upon him of a bucket loaded with ore weighing about five tons. The bucket was hoisted by means of a wire cable which ran over a sheave wheel above the shaft to a drum. Such wheel had been previously broken and patched, and again broke at the time of the accident, allowing the cable to drop upon its shaft when it parted. There was evidence that the wheel should not have been repaired, and that it was dangerous, and, in fact, the second break was through the rivet holes made in putting on the patch. There was also evidence that the cable was likely to break if dropped from the wheel with its load. *Held*, that such evidence tended to show that the breaking of the wheel was the cause of the accident, and warranted the submission of the case to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1016.]

3. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

The admission in evidence of drawings representing a sheave wheel, where the breaking of such a wheel was alleged to have caused the death of plaintiff's intestate, was not prejudicial error, although they were not accurate drawings of the wheel in question where such fact was stated to the jury, and they were used only to illustrate the testimony of witnesses and where an accurate drawing made to scale was introduced by defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4153–4160.]

4. EVIDENCE—OPINION EVIDENCE—COMPETENCY OF EXPERTS.

A machinist who had worked for several years in connection with the making, installing, and operation of hoisting machinery was competent to testify as an expert as to the danger of using a broken sheave wheel in a mine hoist, and the proper way to repair such a wheel, although he had never repaired one.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2349.]

5. TRIAL—MISCONDUCT OF COUNSEL—ACTION OF COURT.

Improper remarks were made by counsel for plaintiff in a suit against a corporation respecting the wealth of the defendant and the persons who composed it are not ground for the reversal of a judgment for the plaintiff by an appellate court, where, on objection being made, they were promptly withdrawn, the court directed, and later instructed the jury to

disregard them, and counsel for defendant proceeded to argue and submit the case without further objection or exception to the action of the court, or its failure to take other or different action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 316.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

Malony & Cobb and John Flournoy, for plaintiff in error.

Z. R. Cheney, R. W. Jennings, and L. S. B. Sawyer, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error, who is administrator of the estate of Ole Linge, deceased, was plaintiff in the court below, where he brought the action to recover damages for the death of Linge by reason of the alleged negligence of the plaintiff in error, the Alaska-Treadwell Gold Mining Company. The case was tried with a jury and a verdict for the plaintiff was returned. The defendant moved for a new trial on various grounds, and also for an arrest of judgment upon the ground that it was conclusively shown by the evidence that the appointment of the plaintiff as administrator of the estate of Linge was void. The motion for a new trial was denied, and the motion in arrest of judgment was granted. Judgment was thereupon rendered dismissing the action, to which judgment the plaintiff sued out a writ of error and brought the case here, where the judgment was reversed, with directions to the District Court to enter judgment in favor of the plaintiff in the case for the amount named in the verdict, with legal interest from the date of the rendition of the verdict. 148 Fed. 808–811. Upon the going down of the mandate the judgment here directed was entered by the trial court, and was, of course, final and conclusive as between the parties thereto in respect to the question that was litigated, and in respect to any and every question which might have been raised and determined in this court on the hearing of the former writ of error. Guaranty Co. of North America v. Phœnix Ins. Co. of Brooklyn, 124 Fed. 170, 59 C. C. A. 376; James v. Germania Iron Co., 107 Fed. 617, 46 C. C. A. 476. But, as the only question that was in fact litigated or that could have been raised or determined by this court on the hearing of the former writ of error was the question in respect to the validity of the plaintiff's appointment as administrator of the estate of the deceased Linge, it is plain that that is the only question upon which the judgment of this court on that writ of error had any bearing. As a matter of course the defendant to the suit could not have obtained a writ of error to reverse the first judgment of the District Court, nor could it have assigned any cross-errors thereon for the reason that it was in no way aggrieved thereby; on the contrary, that judgment was wholly in the defendant's favor, for it dismissed the action absolutely. When the judgment to which the present writ of error goes was entered by the court below in pursuance of the mandate of this court issued upon its judgment given on the hearing of the first writ of error,

the questions now presented for consideration were first opened to the plaintiff in the action. See Guaranty Co. of North America v. Phœnix Ins. Co. of Brooklyn, supra, where the subject was fully considered by the Circuit Court of Appeals for the Eighth Circuit, and where the conclusions above announced were amplified and sustained by numerous authorities. The plaintiff's intestate was at work sinking the main shaft of the Treadwell mine, and was about 800 feet below the surface. The shaft was perpendicular. Ore was being hoisted through the shaft from the 440 foot level by a skip and hoisting apparatus. The skip was a large iron bucket, and, together with its frame and its usual load, it weighed approximately five tons. It was hoisted by means of a cable to a point 60 feet above the mouth of the shaft, at which point the cable ran over a sheave wheel, and thence to a drum around which it was wound. While the skip with its load was being drawn to the surface the sheave wheel broke, the cable parted, and the loaded skip fell, carrying away two bulkheads below, and killing the plaintiff's intestate. In the complaint three grounds of negligence were alleged: First, the use of an old and weak cable; second, the use of an old, weak, much used and broken sheave wheel; and, third, the omission to provide sufficient bulkheads in the shaft. On the trial there was no proof of negligence as to the first and third of the grounds so alleged. The trial court in charging the jury assumed that a reasonably sufficient bulkhead was constructed, and that a reasonably sufficient cable was provided, and submitted to the jury the question of the negligence of the plaintiff in error in using its sheave wheel.

It is contended that the trial court erred in denying the motion of plaintiff in error to instruct the jury to return a verdict in its favor, and it is urged that there was no evidence to go to the jury to show that the accident resulted from any defect in the sheave wheel, or that there was negligence in its use. Upon a careful consideration of the evidence, we think the contention is not sustained. It was in evidence that a short time before the accident a piece from 12 to 14 inches long had been broken out of one of the flanges of the wheel, and that the wheel had been repaired by placing a piece of iron on the outside thereof below the break, upon which the broken piece was put back and riveted. There was evidence that the wheel was made of cast iron. There was evidence of expert machinists that the wheel should not have been repaired at all, and that its use as repaired was dangerous. There was the testimony of the employé who was sent down to clear out the bottom of the shaft after the accident that he found a piece of the perimeter of the broken wheel about two feet long, with "a patch on the cast iron piece and a broken spoke." Nor was there lack of evidence to show the causal connection between the defect in the wheel and the accident. There was testimony that one end of the break went through the rivet holes which had been made when the wheel was previously patched, and testimony that the second break was "on account of the patch not being put on in the right way." There was testimony to show that, if the perimeter of the wheel were broken, the cable would naturally drop, and would be likely to break. In view of all this testimony, there was no room for the application of the doctrine of Patton v. Texas Pacific Ry. Co., 179 U. S. 658, 21

Sup. Ct. 275, 45 L. Ed. 361, viz., that where it is shown that one or two or more acts caused the accident, for some of which the defendant is, and for some of which it is not, liable, the jury is not permitted to guess between them, and "find that the negligence of the employer was the real cause, when there is no satisfactory foundation for that conclusion"; for there is in the record testimony as to facts which, if credited, do furnish a reasonable explanation of the accident. Counsel for plaintiff in error in his motion for an instructed verdict admitted that the breaking of the wheel was "the primary cause of the accident." It was shown that the fracture of the wheel would cause the cable to slip and to drop to the shaft, and that the cable would be likely to break, and it is in evidence that the wheel broke at the point where it had been previously patched, and there was expert evidence that it should not have been used at all after having been broken in the manner indicated in the testimony.

Error is assigned to the admission in evidence of the deposition of Knute Hansen. The deposition had been read to the jury on the former trial of the cause. When it was offered on the second trial, the objection was made that no sufficient foundation was laid for its introduction, in that it was not shown that the witness was over 100 miles away from the place where the court was held. Section 657 of part 4 of the Alaska Code provides that, before such a deposition can be used, "proof shall be made that the witness did reside beyond the service of a subpœna, or that he still continues absent, or infirm", as the case may be." The record shows that, in answer to the objection to the introduction of the deposition, testimony was taken first of the deputy marshal, who testified that three or four days before he made inquiries for Knute Hansen in Juneau, Douglass, and Treadwell for the purpose of serving a subpœna on him, but that he could find no one who knew anything about him, but he admitted that he had not inquired at the mines in the Basin, whereupon the court said, "I think at least you should show he is not in any place in the vicinity of Juneau," and directed that the deputy marshal telephone to see if the witness were not in the Basin. Another witness was called who testified that Hansen was not working in the Basin; that he had left the previous summer, and the witness had not seen him since; that he had received a letter from him saying that he went down to Copper Mountain; that he had never seen him around Juneau since, nor heard of his being there; that he could not say whether Copper Mountain was within 100 miles or not. On this showing the court admitted the deposition. We discover no error in that ruling. The court must have had knowledge of the surrounding country and of all the places mentioned by the witnesses, and we must assume that he reached his conclusion on proof sufficient to show that reasonable effort had been made to find the witness, and that he did reside beyond the reach of a subpœna.

The plaintiff in error contends that it was reversible error to admit in evidence certain drawings of the sheave wheel made by witnesses for the defendant in error; that these drawings are not made according to scale, and are so made as to indicate that the wheel was more weakly constructed than it was in fact. The drawings so made did

not purport to be correct representations of the wheel. They were admitted in evidence as a part of and as illustrating the testimony of the witnesses, and in offering them counsel expressly stated that they were offered as illustrating the witness' testimony showing the general nature of a sheave wheel. "I am willing," he said, "that the court instruct the jury, and I ask the court to instruct the jury now that this is not to be taken as a drawing of the sheave wheel in question." If there was error in the admission of these drawings so admitted not to be correct, it was certainly cured by the introduction in evidence by the plaintiff in error of carefully prepared drawings of the wheel made according to scale and measurement, the accuracy of which was not disputed.

It is contended that W. C. Angell, who testified as an expert as to the safety of mechanical appliances, was not shown to possess knowledge of the customs and usages of the business to which his testimony related. The witness on his own testimony was a machinist by occupation, had served an apprenticeship of four years with Golden State Miner's Iron Works of San Francisco, manufacturers of hoisting machinery, sheave wheels, etc., after which as journeyman with said concern for two years he did general work of all kinds, handling sheave wheels and hoisting machinery generally, and had for a period of five years been a machinist in a mine in Alaska similar to the Treadwell mine, and had for two years been a machinist at the Treadwell mine engaged in erecting the stamp mills of the plaintiff in error, and had had other experience in the line of his occupation. He testified that he understood how the strain comes on hoisting machinery, and that he had worked on the sheave wheels at the Treadwell mine, and had installed the hoist at Treadwell in the year 1898. Notwithstanding this evidence of his qualifications as an expert, it is argued that for want of evidence that he had knowledge and experience as to the customary and usual method of repairing a sheave such as the one in question he was not shown to be qualified to say, as he did, that it ought not to have been repaired at all, and that "it is an awfully hard thing to repair a wheel of this kind and bring it back to its original strength," and that, if it were repaired, the proper way would be to have a piece of sheet steel extend underneath the frame, around on both sides, clear around the circumference of the wheel and rivet it. We do not agree with counsel for plaintiff in error that, before any witness could give such testimony as an expert, he must have had experience in repairing a sheave wheel. An expert machinist, with the general experience and training which the witness was shown to have had, should be assumed to have the knowledge requisite for the repair of old machinery, even if he had had no actual experience in repairing the particular device in question, and we think there was no error in permitting the witness to testify from such knowledge and experience as to the danger of using a broken sheave wheel or as to the proper method of repairing the same.

Error is assigned to the refusal of the court to give to the jury certain requested instructions. But, as the court properly instructed the jury on the points involved therein, no substantial right was denied the plaintiff in error in such refusal.

The bill of exceptions shows that Z. R. Cheney, the defendant in error, in arguing the case to the jury, used the following language:

"That the defendant, the Alaska-Treadwell Gold Mining Company, was owned by the wealthy Rothschilds of England, who are gathering the wealth of this country and sending it abroad, and that, if the jury should return a verdict for the full amount prayed for, namely, $10,000, such amount would not equal 1 per cent. of the annual income of the defendant."

To this argument and statement the defendant by its counsel objected and excepted, and the court thereupon sustained the objection, and directed that no such argument be used. Whereupon said counsel for plaintiff immediately stated to the jury that he wished to withdraw said remark and requested the jury not to consider it, and the court both at that time and in its charge instructed the jury that it must disregard that and all other remarks of counsel which were not borne out by the evidence. No honorable attorney would deliberately make such a statement to a jury. The misconduct was gross. It was made one of the grounds of a motion for a new trial, but the trial court in view of the prompt withdrawal of the remarks, and its own instruction to the jury not to consider the same, and the nature of the evidence in the case, held that it was not a sufficient ground for setting aside the verdict.

The assignment which directs our attention to the misconduct of counsel is that the court erred in refusing to grant a new trial on that ground. This, of course, is insufficient to bring the matter before this court, for the ruling of the trial court on a motion for a new trial is not assignable as error. But, under the power which we possess under our rules to notice a plain error not assigned, we are disposed to enter into the consideration of the question, and, first, we inquire, what is the error which is here complained of? In order to exercise our appellate jurisdiction, error must have been committed by the trial court either in ruling or refusing to rule upon some question arising in the course of the trial. In this case the court promptly made its ruling. In 2 Encyc. of Plead. & Prac. 755, it is said:

"In order that a party may avail himself in an appellate court of an objection for misconduct of opposing counsel in the argument of a case, he must not only interpose a seasonable objection, as has just been stated, but he must then press the court to a distinct ruling, and, if dissatisfied therewith, enter an exception, otherwise there is nothing presented for review."

The same is said in substance in 2 Cyc. 713. In Crumpton v. United States, 138 U. S. 361, 11 Sup. Ct. 355, 34 L. Ed. 958, the court said:

"It is the duty of defendant's counsel at once to call the attention of the court to the objectionable remarks and request its interposition, and, in case of a refusal, to note an exception."

In Dunlop v. United States, 165 U. S. 486–498, 17 Sup. Ct. 375, 41 L. Ed. 799, the court said:

"In such cases, however, if the court interfere and counsel promptly withdraw the remark, the error will generally be deemed to be cured."

In Sawyer v. United States, 202 U. S. 150–167, 26 Sup. Ct. 575, 50 L. Ed. 972, the court said:

"The remark of the district attorney was not appropriate argument and should not have been made, but we see nothing more that could have been

done than was done by the court as soon as the objection was made by counsel for the plaintiff in error. Counsel in summing up to the jury are under some excitement, and naturally may make a remark or statement which is improper, but there is on that account no ground laid for setting aside a verdict, where, as in this case, the court held it was improper, and the counsel withdrew and apologized for it."

In Weeks v. Scharer, 129 Fed. 333, 64 C. C. A. 11, the Circuit Court of Appeals for the Eighth Circuit, in a case where counsel in argument made an unwarranted statement of facts not testified to, said:

"This matter may be dismissed from further consideration with the observation that the attention and action of the court were at once invoked, and the court promptly sustained the objection and directed the jury to disregard the improper statement."

There are undoubtedly cases of such flagrant abuse of the privilege of counsel that no admonition by the court will cure the error. The improper remarks of counsel may be of such a nature that, notwithstanding their withdrawal and the court's instruction to disregard them, the jury, while honestly endeavoring to discharge their duty, and believing that their verdict is not influenced thereby, may nevertheless be unable to divest their minds of the impression so illegally and unfairly produced. But the question here is: At what point in the trial did the trial court err or fail to perform the duty which rested upon it? Its first and obvious duty was to instruct the jury not to consider the objectionable remarks. This was done. Was it also incumbent on the court of its own motion, without suggestion of counsel, to dismiss the jury and to proceed no further with the trial? Certainly such an error may be waived by opposing counsel, and we think it is too clear to require discussion that it is a waiver if he proceed with the case without further pressing the objection and take his chances on the verdict of the jury. In United States v. Alexander (C. C.) 119 Fed. 1015, Judge Newman, on ruling on a motion for a new trial, well said, with reference to the improper language claimed to have been used by the assistant district attorney in his argument to the jury:

"When the attention of the court was called by one of defendant's counsel to the use of this language, that these expressions were uttered, and the court stated to counsel in the presence of the jury in the most emphatic way that the language was improper and ought not to have been used, no further action by the court was requested and no exception was taken. On the contrary, defendant's counsel seemed entirely satisfied with the action of the court at the time. If further action by the court had been desired, it should have been requested, and, if refused, an exception noted."

And we hold in this case that, if counsel for the plaintiff in error was not satisfied that the error was cured by the withdrawal of the objectionable remarks and the admonition of the court, he should have objected to further proceeding with the trial or should have moved the court to discharge the jury, and, if the ruling were adverse, he should have saved an exception thereto, and that, as the record is here presented, there is no reversible error.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). I dissent for this reason: The bill of exceptions shows that one of the attorneys for the plaintiff,

and who, from the name, seems also to have been the administrator of the estate of the deceased, used this language in arguing the case to the jury:

"That the defendant, the Alaska-Treadwell Gold Mining Company, was owned by the wealthy Rothschilds of England, who are gathering the wealth of this country and sending it abroad, and that, if the jury should return a verdict for the full amount prayed for, namely, $10,000, such amount would not equal 1 per cent. of the annual income of the defendant."

The record proceeds:

"To which argument and statement the defendant, by its counsel, objected and excepted, and the court thereupon sustained the objection and directed that no such argument be used, whereupon said counsel for plaintiff immediately stated to the jury that he wished to withdraw said remark and requested the jury not to consider it, and the court, both at that time and in its charge, instructed the jury that it must disregard that and all other remarks of counsel which were not borne out by the evidence."

This conduct of counsel for the plaintiff constituted, it seems, one of the grounds of the motion made by the defendant for a new trial, and, in the opinion of the trial court rendered in the case and set out in the record, we find this:

"After counsel for the plaintiff made the remark, as charged by defendant, counsel excepted thereto. Not only did counsel for plaintiff withdraw the statement and request the jury not to consider it, but the court both at the time, and in its charge emphatically instructed the jury that it must disregard that and all other remarks of counsel which were not borne out by the evidence. The practice of injecting remarks of that character into arguments before the jury is all too prevalent at this bar, and is most pernicious. The court has repeatedly cautioned various counsel upon this subject, pointing out the impropriety and unfairness of it. No permanent good can come of it. A perversion of justice always results, and the bar should cease to follow it. In this instance, however, the statement of counsel for plaintiff and the instruction of the court were such that it would be improper to set the verdict aside. Certainly is this true when the evidence as to the earning capacity, life expectancy, etc., are sufficient in themselves to support the verdict. This ground then cannot avail to secure a new trial, however great may have been the unfairness and impropriety of the language used."

While the rule is well settled that it is not for the appellate court to consider whether or not the amount of damages awarded by the jury was, under the evidence, excessive, it is proper, in considering the possible effect upon the jury of the grossly improper conduct of counsel in this case, to note the fact that the amount of damages awarded by the jury could not have been greater than it was, for it was the full amount sued for, to wit, $10,000. The well-established rule is also to be remembered that:

"The presumption always is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice, and could not have prejudiced the complaining party that the rule that error without prejudice is no ground for reversal is applicable." Union Pac. R. Co. v. Field, 137 Fed. 14, 69 C. C. A. 536; U. S. v. Gentry, 119 Fed. 75, 55 C. C. A. 658; Moores v. Bank, 104 U. S. 625, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; Railroad Co. v. O'Brien, 119 U. S. 103, 7 Sup. Ct. 118, 30 L. Ed. 299; Mexia v. Oliver, 148 U. S. 675, 13 Sup. Ct. 754, 37 L. Ed. 602; Railroad Co. v. O'Reilly, 158 U. S. 337, 15 Sup. Ct. 830, 39 L. Ed. 1006; Peck v. Heurich, 167 U. S. 629, 17 Sup. Ct. 927, 42 L. Ed. 302; Railroad Co. v. Holloway, 114 Fed. 465, 52 C. C. A. 260; Association

v. Shryock, 73 Fed. 781, 20 C. C. A. 3; Railroad Co. v. McClurg, 59 Fed. 863, 8 C. C. A. 322; Deery v. Gray, 5 Wall. 807, 808, 18 L. Ed. 653; Smith v. Shoemaker, 17 Wall. 639, 21 L. Ed. 717.

I am unable to understand how the court below could permit a verdict to stand in view of the conduct of counsel which it characterized as "pernicious," and from which it expressly declared "a perversion of justice always results." It seems to me that a trial which is not fair and impartial is a mockery of justice, and that an appellate court should not sustain the judgment in which such a trial resulted, when brought up for review upon a record which affirmatively shows the unfairness. I say the record in this case affirmatively shows the improper conduct because the bill of exceptions contained in the record, and which was settled and signed by the trial judge, expressly recites the conduct and states that the defendant objected and excepted thereto at the time. Nothing more in my opinion is needed for the correction of the error. But, if an assignment of error be considered essential, that also is found in the record in these words:

"The court erred in refusing to grant defendant a new trial of this cause on the ground of the misconduct of counsel for plaintiff in his argument of the cause to the jury which vitiated said verdict and made it improper and erroneous to render a judgment thereon."

It is true that that assignment was filed in support of a motion for a new trial, and that we cannot review an order refusing a new trial. But the assignment, which is a part of the record, goes beyond the verdict and also assigns as error the entry of the judgment because of the misconduct of the plaintiff's counsel, which in my opinion is quite sufficient even if it be conceded that any assignment of error was necessary.

I hold that the judgment should be reversed because of such gross misconduct of the counsel for the plaintiff. Whether or not the Rothschilds of England are wealthy, and whether or not they are gathering the wealth of this country and sending it abroad, had no connection whatever with any issue on trial before the court and jury. The manifest and sole purpose of counsel could only have been to throw into the scales of justice grossly improper extraneous matter, the direct tendency of which was to inflame the passions and prejudice of the jurors against the defendant, thus absolutely preventing the fair and impartial trial of the issues to which, and only to which, each side was justly and legally entitled. To what extent such extraneous and improper matter may have influenced the verdict that was returned—for the maximum amount that could have been awarded the plaintiff—it is impossible for any one to say.

The judgment in the case of Mountain Copper Co., Ltd., v. Van Buren, 123 Fed. 61, 59 C. C. A. 279, which was also an action for damages, was reversed on another ground, but in concluding the opinion in the case we said:

"But we think it proper to refer to another point presented by the plaintiff in error as ground for reversal growing out of a statement by one of the counsel for the plaintiffs in the action, in his closing argument to the jury, to the effect 'that an accident insurance company was defending the case.'

It is not pretended that there was any evidence tending to show that such was the fact. It is true that, upon objection and exception made and taken to the remark of the plaintiffs' counsel, the court directed him to desist from that line of argument, and instructed the jury to disregard the statement. It is not necessary to decide in this case whether this impropriety on the part of counsel should or should not of itself call for a reversal of the judgment, but it is well to call attention to the gross impropriety of bringing into the trial of any case matter wholly unconnected with it, the direct tendency of which may well be to prejudice one of the parties, and the extent of which it is not always, if ever, possible to measure."

In Cudahy Packing Co. v. Skoumal, 125 Fed. 477, 60 C. C. A. 306, the Circuit Court of Appeals for the Eighth Circuit said:

"It goes without saying that a trial judge has the power, and is always at liberty of his own motion, to reprimand counsel when they make use of language or indulge in a line of argument that is improper, unfair, or that is calculated to arouse the prejudice of jurors, or divert their attention to extraneous matters, or to issues that are foreign to the case; and no trial judge should hesitate for a moment to exercise such power, although his intervention is not solicited."

In Mitchum v. State of Georgia, 11 Ga. 634, it was said:

"When counsel are permitted to state facts in argument and to comment upon them, the usage of the courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is therefore denied. It may be said in answer to these views that the statements of counsel are not evidence, that the court is bound so to instruct the jury, and that they are sworn to render a verdict only according to the evidence. Whilst all this is true, yet the effect is to bring the statements of counsel to bear upon the verdict with more or less force, according to circumstances; and, if they in any degree influence the finding, the law is violated, and the purity and impartiality of the trial are tarnished and weakened. If not evidence, then without doubt the jury have nothing to do with them, and the lawyer no right to make them. * * * To an extent not definable, yet to a dangerous extent, they are evidence, not given under oath, without cross-examination, and irrespective of all those precautionary rules by which competency is tested."

In Brown v. Swineford, 44 Wis. 293, 28 Am. Rep. 582, it was said:

"The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It may sometimes be a very difficult and delicate duty to confine counsel to a legitimate course of argument. But, like other difficult and delicate duties, it must be performed by those upon whom the law imposes it. It is the duty of the Circuit Courts in jury trials to interfere in all proper cases of their own motion. This is due to truth and justice. And, if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court."

In State v. Hannett, 54 Vt. 89, the court said:

"Counsel in their arguments to the jury are bound to keep within the limits of fair and temperate discussion. The range of that discussion is circumscribed by the evidence in the case. Any violation of this rule entitles the adverse party to an exception which is as potent to upset a verdict as any other error committed during the trial."

I think the judgment should be reversed, and the case remanded to the court below for a new trial.